UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TREVOR-BLAIR
DAVIS, SR.,

       Plaintiff,                           Civil Action No. 15-CV-12076

vs.                                                  HON. MARK A. GOLDSMITH

CARLA A. ROBERT and SUZANNE
T. HALL,

       Defendants.
_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT HALL'S MOTION TO DISMISS (Dkt. 29) and (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (Dkt. 41)**

       Plaintiff Robert Trevor-Blair Davis, Sr., brought this lawsuit under 42 U.S.C. § 1983 against two municipal officials alleging various violations of his constitutional rights. In support of his claims against Defendant Suzanne T. Hall, Plaintiff alleges she took several actions purportedly in retaliation for Plaintiff's public activism against her and the public agency on whose board she sits, the Wayne County Airport Authority ("WCAA"), which Plaintiff contends were in violation of his First Amendment rights. While Plaintiff identifies three discrete actions taken by Hall that were allegedly retaliatory and unconstitutional, the Court concludes that two of those actions were not taken under color of state law, and therefore cannot state a claim for unconstitutional retaliatory behavior. As to the third action, however, Plaintiff has pleaded sufficient facts to permit an inference that Hall was acting with indicia of state authority, in addition to facts that set forth a plausible claim for relief. Moreover, because the Sixth Circuit has addressed the right at stake in Plaintiff's surviving claim before Hall's allegedly wrongful acts, she is not entitled to qualified immunity. Accordingly, Hall's motion to dismiss is granted

1

in part and denied in part. As explained below, the Court also grants in part and denies in part Plaintiff's motion for leave to file a second amended complaint.

## I. BACKGROUND

Plaintiff is a former elected member of the Highland Park Board of Education, and also a self-described "union and community activist," previously employed as a union staff representative with Michigan's American Federation of State, County and Municipal Employees ("AFSCME") Council 25. First Am. Compl. ¶¶ 14, 19 (Dkt. 21). Hall is, and was at all relevant times, a member of the Wayne County Airport Authority Board ("the Board"), and at certain times served as chair of the Board. Id. ¶ 16. In 2011, Plaintiff filed a lawsuit against the WCAA, the Board, and Hall for violations of Michigan's Open Meetings Act, in connection with the hiring of Turkia Mullin, former CEO for the WCAA. Id. ¶ 106. With the lawsuit garnering media attention, Plaintiff gave several media interviews criticizing Hall for her actions in the hiring process. Id. ¶¶ 107-108.

After the filing of that lawsuit, Plaintiff was indicted, in 2012, on various federal charges relating to alleged misconduct while Plaintiff was serving on the Highland Park Board of Education, as well as for false tax filings. Id. ¶¶ 17-18. Plaintiff acknowledges that his indictment was widely publicized. Id. ¶ 20. Notwithstanding the indictment, Plaintiff remained employed with AFSCME Council 25. Id. ¶ 19. Indeed, Plaintiff was selected by AFSCME Council 25 President Al Garrett to represent the AFSCME at a June 2012 Harvard University program entitled "Senior Executives in State and Local Government," ("the Harvard program"), and was also appointed lead negotiator for Wayne County Airport Authority Local 953 ("Local 953"). Id. ¶¶ 20-21. In September 2014, Plaintiff pleaded guilty to two federal charges, and, shortly thereafter, was terminated from his position with AFSCME Council 25. Id. ¶¶ 19, 22.

2

Against this basic background, Plaintiff alleges three discrete instances of unlawful retaliation by Hall, mostly in response to Plaintiff's 2011 lawsuit and his subsequent public criticism of Hall.

First, Plaintiff alleges that Hall succeeded in engineering Plaintiff's removal from the Harvard program. Id. ¶ 121; Pl. Resp. to Def. Hall Mot. at 14 (Dkt. 30). According to the complaint, Plaintiff and Hall attended the Harvard program at the same time. First Am. Compl. ¶ 110. During the first day of the program, Plaintiff introduced himself as a union activist and described some of the lawsuits he had filed that were successful at exposing unlawful public action or corruption; during that introduction, Plaintiff specifically identified Hall as one such state official he had exposed. Id. ¶ 112. During her own introduction, Hall described Plaintiff as both a nuisance and a filer of frivolous lawsuits. Id. ¶ 113. Plaintiff further alleges that during a group evening outing Hall "declared that she was going to get Plaintiff Davis 'kicked out' of the Harvard [ ] program." Id. ¶ 115. The next day, the program director informed Plaintiff that he had learned of Plaintiff's indictment through an unnamed participant. Id. ¶ 117. While Plaintiff maintained to the director that the program sponsors and organizers had been aware of the indictment prior to Plaintiff's arrival, the director informed Plaintiff that he would need to leave the Harvard program. Id. ¶¶ 117-118. Plaintiff states that he learned of Hall's involvement in this removal by way of a local reporter, who told Plaintiff that "he had received a tip from Defendant Hall regarding Plaintiff Davis'[s] departure from the Harvard [ ] program." Id. ¶ 119. A brief story on the same ran thereafter. Id. ¶ 120. Plaintiff avers that he "was caused great embarrassment, personal humiliation, impairment of reputation, mental anguish and suffering as a result of Defendant Hall's retaliatory actions." Id.

Second, Plaintiff alleges that Hall "harassed Plaintiff Davis by stating in front of other elected and appointed officials attending [a 2014 golf outing in support of the Wayne County Sheriff], that Plaintiff Davis owed Defendant Hall $50,000." Id. ¶ 122; Pl. Resp. to Def. Hall Mot. at 14.

Third, Plaintiff alleges that Hall attempted to have Plaintiff removed as the staff representative for Local 953. Pl. Resp.to Def. Hall Mot. at 14; First Am. Compl. ¶¶ 123-126. Specifically, Plaintiff contends that Hall approached individual union members in an effort to have them request Plaintiff's removal from the staff representative position. First Am. Compl. ¶ 124. Plaintiff avers that Hall's actions "nearly cost Plaintiff Davis his employment with AFSCME Council 25," and that President Garrett convened a meeting specifically to discuss whether Plaintiff would be retained in his position. Id. ¶ 125.

## II. STANDARD OF DECISION

When presented with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts are obliged to construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true in determining whether the complaint states a plausible claim for relief. Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010). The plaintiff must provide the grounds for his entitlement to relief, which necessarily requires more than labels and conclusions or a formulaic recitation of the elements that comprise a cause of action. Id. Moreover, courts are not bound to accept legal conclusions as true, even when presented as a factual allegation. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Plausibility, in turn, requires a "reasonable inference that the defendant is liable for the misconduct alleged"; "facts that are 'merely consistent with' a defendant's liability" are insufficient. Id. at 678.

4

In considering a motion to dismiss, courts may rely on the complaint, documents incorporated by reference into the complaint and integral to the plaintiff's claims, documents attached as exhibits to the complaint, and matters of public record. Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335-336 (6th Cir. 2007).

### III. ANALYSIS

#### A. State Action

Section 1983 affords a plaintiff relief from constitutional violations committed by state actors. See West v. Atkins, 487 U.S. 42, 48 (1988). Accordingly, a threshold issue is whether Hall was acting under color of state law during the three alleged instances of retaliation.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); see also Waters v. City of Morristown, Tenn., 242 F.3d 353, 359 (6th Cir. 2001) (state actor's conduct must "occur[ ] in the course of performing an actual or apparent duty of his office, or [ ] the conduct is such that the actor could not have behaved as he did without the authority of his office."). Importantly, however, not every action undertaken by a state actor is under color of state law. Waters, 242 F.3d at 359. Rather, the official must "intend[ ] to act in an official capacity or to exercise official responsibilities pursuant to state law," or otherwise abuse the official's state-sanctioned authority. Id. When a state official is acting "in the ambit of their personal pursuits," they are not acting under color of state law. Id. (quoting Screws v. United States, 325 U.S. 91, 111 (1945)). Thus, "private conduct, outside the course or scope of [a state official's] duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." Id.; see

also id. ("[T]he challenged conduct [must be] related in some meaningful way either to the actor's governmental status or to the performance of his duties.").

As to the first two incidents described by Plaintiff — the removal from the Harvard program and the remark at the golf outing — there is no allegation that Hall either (i) acted in an official capacity, (ii) exercised official responsibilities, or (iii) otherwise exerted (validly or not) her authority as a municipal official.

The only connection the operative complaint draws between Hall's participation in the Harvard program and her status as a state actor is Hall's introductory remark that she was a member of the Board.  First Am. Compl. ¶ 113.  However, merely identifying the municipal entity on which she served in the course of being introduced at a meeting does not reasonably support an inference that Hall was purporting to or intending to act in some official capacity.

Nor has Plaintiff pleaded any facts tying Hall's status as a state actor to her alleged communication regarding Plaintiff's indictment to the program director.[1]  That is, there are no facts to suggest Hall attempted to, or did, flex her own state authority to get Plaintiff removed from the Harvard program.  And given Plaintiff's own admission that his indictment was widely publicized, Hall's position did not endow her with special information acquired by virtue of her office; rather, any participant who might have been interested in Plaintiff's background could

---

[1] The Court also observes that the complaint does not expressly identify Hall as the individual who informed the program director of Plaintiff's indictment.  Rather, the complaint states that a local reporter "had received a tip from Defendant Hall regarding Plaintiff Davis'[s] departure from the Harvard [ ] program," and "[i]t was not until Plaintiff Davis was so informed by the news reporter that he became aware of Defendant Hall's involvement in getting him removed from the Harvard [ ] program."  First Am. Compl. ¶ 119.  This leaves open the possibility that Hall may have provided the local reporter with the information regarding Plaintiff's removal from the program, knowledge to which she would have been privy by virtue of her own participation in the program, without also being the same individual who brought Plaintiff's indictment to the program director's attention.  However, a fair reading of the complaint, construing all facts and inferences in favor of Plaintiff, suggests Hall may have been involved in Plaintiff's removal from the program.

have easily uncovered the information and communicated it. See Meadows v. Enyeart, 627 F. App'x 496, 501 (6th Cir. 2015) (when "the 'nature of the act performed' was 'functionally equivalent to that of any private citizen,'" a public official did not act under color of state law (quoting Redding v. St. Eward, 241 F.3d 530, 533 (6th Cir. 2001))).

Plaintiff attempts to bolster his contention of state action by offering a proposed second amended complaint, which lists additional facts connecting Hall's municipal office to her attendance at the Harvard program. See Pl. Mot. for Leave to File at 5-6 (Dkt. 41). Plaintiff's proposed amended complaint avers that (i) Hall was admitted to the Harvard program in her official capacities as both an administrative appointee of the Wayne County Sheriff and a member of the Board; (ii) Hall's application to the program listed "her work and purported accomplishments as a duly appointed member of the [Board] as a basis to be admitted"; and (iii) Hall was admitted to the program because she was then-chair of the Board. Proposed Second Am. Compl., Ex. A to Pl. Mot. for Leave to File, ¶¶ 115, 127, 128 (Dkt. 41-1). However, even assuming that Hall's participation in the program was possible only by virtue of her county background and/or position, Plaintiff has not pleaded any facts showing that Hall exercised, or purported to exercise, official duties, or that she otherwise misused her municipal position and/or authority. Therefore, even taking into account the proposed amended pleading, there is no indication that Hall was acting under color of state law either at the Harvard program or during her alleged conversation with the program director.

Regarding the 2014 golf outing, Plaintiff has pleaded no facts tying Hall's attendance at or participation in the outing to her municipal position, either in the current operative complaint or in the proposed amended complaint. Accordingly, there is no basis to conclude that Hall was acting under color of state law during the golf outing.

By contrast, the third alleged instance of retaliation permits an inference that Hall may have been acting under color of state law. Specifically, reading the complaint in the light most favorable to Plaintiff, there are inferences to be made that Hall's communications to individual union members, given her position on the Board, could have been accompanied by some indicia of authority such that she was either purporting to act in her official capacity, or that she was otherwise aided by her state authority in attempting to convince individual union members to replace Plaintiff as staff representative and chief negotiator. Given the power dynamics that may come into play during negotiations over a collective bargaining agreement, Hall's suggestions regarding Plaintiff's continued employment may not have carried any weight but for her position on the Board.

Hall argues that she could not have been acting under color of state law because neither she individually nor the Board as a whole had any power or authority to remove, or compel AFSCME Council 25 to remove, Plaintiff as staff representative and/or negotiator for Local 953. Def. Hall Mot. at 11 (Dkt. 29); Def. Hall Reply at 3 (Dkt. 31). However, state action is made out by abuse of position or authority; thus, it is not essential that the official actually have authority to commit the challenged act. See West, 487 U.S. at 49-50 ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." (emphasis added)).

Hall further argues that she did not require her actual or apparent authority to talk with individual union members about Plaintiff; rather, any member of the public could have discussed Plaintiff's employment with individual union members. Def. Hall Reply at 3. However, even if a private citizen could have taken the same action as that of a state official, if the state official's conduct was aided by indicia of actual or ostensible state authority, state action may be

8

established. See Waters, 242 F.3d at 359-360 (focusing the color-of-state-law inquiry on whether a defendant's official position permitted or played a meaningful role in allowing the alleged misconduct to have occurred); Burris v. Thorpe, 166 F. App'x 799, 802-803 (6th Cir. 2006) (affirming district court's conclusion that, because there was no evidence that police officer used his position to coerce plaintiff into a sexual relationship or to prevent termination of the relationship, police officer was not acting under color of state law even if conduct occurred while officer was on duty and in uniform).

While the complaint does not recount the specific context of the alleged conversations, including the timing, the specific statements, or the parties, at this early stage of the litigation the Court cannot say that Hall's actions were unaided by indicia of actual or ostensible authority. The complaint permits a fair inference that Hall's position on the Board infused her statements concerning Plaintiff's position with Local 953 with greater weight than those of a private individual; indeed, the complaint expressly states that "as a result of Defendant Hall's actions, President Al Garrett had to convene a meeting with the leadership of Local 953 to get their feelings with respect to keeping Plaintiff Davis as their staff representative." First Am. Compl. ¶ 125. Further discovery is needed on these alleged conversations, which will disclose whether the conversations were truly of a private nature, unaided by Hall's position on the Board, or whether she actually flexed some measure of authority in attempting to have Plaintiff removed from his position.

**B. Prima Facie Case for First Amendment Retaliation Claim**

Because Plaintiff has plausibly alleged that Hall was acting under color of state law when she approached individual union members in an effort to have Plaintiff removed from his

position with Local 953, the Court turns to whether this alleged action meets the prima facie requirements of a § 1983 First Amendment retaliation claim.

Actions taken against individuals that do not constitute constitutional violations themselves may nonetheless be unconstitutional "if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc). To proceed under a retaliation theory, a plaintiff must demonstrate: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Id. at 394.

### 1. Protected Conduct

Plaintiff alleges that he engaged in protected conduct when he filed a lawsuit against the Board and Hall and publicly criticized Hall in the media, as well as when he identified Hall at the Harvard program as a public official whose unlawful acts he had exposed. First Am. Compl. ¶ 126; Pl. Resp. to Def. Hall Mot. at 12. Nearly all of Hall's opposition on this point is devoted to contesting that Plaintiff's statements on the first day of the Harvard program fall within the ambit of the First Amendment. See Def. Hall Mot. at 14-15. However, even assuming that Plaintiff's statements at the Harvard program were not protected conduct, Plaintiff's other alleged actions — filing a lawsuit contending that government officials violated state law and criticizing one of those officials in the media — clearly are protected. See Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 723 (6th Cir. 2010) (comments in press protected activity); Eckerman v. Tenn. Dep't of Safety, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment."); Lowery v.

Euverard, 497 F.3d 584, 587-588 (6th Cir. 2007) (recognizing that the First Amendment encompasses criticism of government officials). Hall does not suggest otherwise. See Def. Hall Mot. at 15 n.2 (citing a Sixth Circuit case, Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 588 (6th Cir. 2008), for the proposition that, "the right to criticize public officials is clearly protected by the First Amendment"). Accordingly, Plaintiff has adequately pleaded this first element of a retaliation claim.

### 2. Adverse Action

As discussed above, of the three originally pleaded adverse actions, just one remains — Hall's alleged attempts to get Plaintiff removed from his position with AFSCME Council 25. Hall does not address this action directly in her motion.[2] In her reply, however, Hall maintains that Plaintiff has shown only that she "said bad things about him . . . to union employees." Def. Hall Reply at 4. In other words, Hall's actions were limited to attempts to get others (i.e., AFSCME Council 25) to take action against Plaintiff; she herself took no adverse action and had no authority to compel others to do so. Id. at 4-5.

But this position misses the point. Hall's concerted effort to have Plaintiff removed from his position with Local 953 is the adverse action against which he complains — not his subsequent (and unrelated) termination. Accordingly, her lack of direct authority to bring about

---

[2] Hall does cursorily note that she could not have "interfer[ed] with collective bargaining negotiations with AFSCME," because the Board is not a third-party to the bargaining relationship. Def. Hall Mot. at 11 n.1. The argument seems to draw on the requirement applicable in a tortious interference claim that the defendant-agent be acting solely for her own interest when she engaged in the challenged conduct, rather than her principal's. Kuhn v. Washtenaw Cnty., 709 F.3d 612, 630-631 (6th Cir. 2013). However, Hall has submitted no authority that this requirement applies in a retaliation claim. And, in any case, at this pleading stage in the litigation, there is at least an inference that can be drawn from the pleadings that Hall attempted to get Plaintiff removed from his position for her own benefit, not her employer's. First Am. Compl. ¶¶ 124-126.

11

that termination (or any other workplace consequence) is not dispositive in light of the actions that she did take.

Causing Plaintiff's employer to consider terminating his employment is sufficiently serious on its own to qualify as "adverse action." The Sixth Circuit's decision in Fritz v. Charter Township of Comstock illustrates this point in a set of facts similar to those presented here. Like our case, Fritz involved a public official who possessed state-sanctioned power that could substantially impact a third-party decision maker's financial interests. While the Fritz plaintiff did not plead specific facts showing that the defendant "specifically threatened her business" or "attempted to persuade [the plaintiff's employer] to terminate its contract with [the plaintiff]," her complaint alleged that the defendant "communicated his dislike and opposition to [the plaintiff's] speech and commented on his opinion of its effect on her reputation and on the reputation" of her employer. Fritz, 592 F.3d at 725. The court went on to hold that the alleged statements could constitute adverse action, because the officials wielded the "power to substantially affect [the employer's] ability to do business . . . through their role in enacting township ordinances and making zoning decisions, [making] the alleged threats [ ] more tangible." Id. at 726. In our case, Plaintiff explicitly alleges that Hall attempted to convince individual union members to terminate their relationship with Plaintiff. First Am. Compl. ¶ 124. And Hall, as an adverse bargaining party, was in a position to substantially affect the union's interests. The complaint further alleges that such influence was felt, culminating in a union meeting to determine whether Plaintiff would remain in his role as staff representative and chief negotiator. See id. ¶ 125.

Acknowledging the power of persuasion, as Fritz does, makes eminent sense; a person of ordinary firmness would likely be deterred from participating in protected activity by the

prospect of an influential public official endangering his or her economic livelihood, irrespective of whether a third party was necessary to, or even did, pull the proverbial trigger. See Fritz, 592 F.3d at 726 ("A person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior."); Harris v. Bornhorst, 513 F.3d 503, 519 (6th Cir. 2008) (holding that public official's comments to plaintiff's prospective employer regarding the official's own opinion as to whether plaintiff was guilty of a crime for which plaintiff's conviction had been reversed would likely deter a person of ordinary firmness from protected activity); Paige v. Coyner, 614 F.3d 273, 281 (6th Cir. 2010) ("Losing one's job and accompanying benefits is certainly severe enough to deter a person of ordinary firmness from speaking at public meetings.").

This is all the more true when the public official in question carries considerable sway with the final decision maker or otherwise has the ability to significantly influence the final decision maker's interests. To shield public officials from liability for conduct similar to that alleged here simply because it was either a step removed from or failed to fully bring about the intended result (e.g., a termination) would ignore the practical reality that even the threat of losing one's livelihood is likely to have a significant chilling effect on protected activity. Accordingly, Hall's lack of legal or technical authority to remove Plaintiff from his position as staff representative and/or chief negotiator for Local 953 does not render her conduct any less adverse.

Admittedly, Plaintiff's complaint is short on specific facts detailing the nature and substance of the alleged communications. However, like Fritz, this case is still in the early stages of litigation and discovery has yet to commence, let alone be completed. For now,

Plaintiff has sufficiently, even if generally, alleged that Hall did attempt to convince the union membership to terminate its relationship with Plaintiff.  As in Fritz, such actions amount to a credible threat to Plaintiff's employment.  See Fritz, 592 F.3d at 725-726.  This is sufficient to survive a 12(b)(6) motion.  Id.

Hall also challenges Plaintiff's allegations of "great injury and personal embarrassment and humiliation," First Am. Compl. ¶ 127, as insufficiently personalized and/or concrete to establish "adverse action."  Def. Hall Mot. at 17-19.  Courts do probe allegations of injury to assess whether they are sufficiently particularized to constitute as adverse action.  See Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 584-585 (6th Cir. 2012); Mezibov v. Allen, 411 F.3d 712, 722 (6th Cir. 2005); Mattox v. City of Forest Park, 183 F.3d 515, 523 (6th Cir. 1999).  However, Hall's reliance on this principle fails to address Plaintiff's chief alleged injury in the form of tangible threats to his employment relationship with Local 953 and/or AFSCME Council 25.  See First Am. Compl. ¶¶ 125-126.  As discussed, supra, such a threat may constitute a cognizable injury if it would deter an ordinary person from exercising his or her First Amendment rights.

Moreover, this injury, as presently described, is both concrete and personalized.  Plaintiff has not alleged abstract or inchoate threats to his position with Local 953; rather, he alleges that Hall's actions prompted a meeting to determine Plaintiff's future with Local 953, causing him emotional harm.  The fact that Plaintiff was ultimately terminated from his position in connection with his pleading guilty to certain federal charges does not diminish or detract from the alleged interference that took place at an earlier point in time.  Thus, as currently pleaded, Hall's actions amounted to "a threat to the plaintiff's livelihood that resulted in real, measureable

14

harm." Strader v. Ky. Dep't of Fish & Wildlife Res., No. 3:09-62-DCR, 2012 WL 3220732, at *3 (E.D. Ky. Aug. 6, 2012) (collecting cases).[3]

Finally, Hall argues that as a public figure, Plaintiff is required to tolerate more significant actions in response to his exercising his First Amendment rights than would an ordinary citizen. Def. Hall Mot. at 20-21; Def. Hall Reply at 6. The short response is that First Amendment law is context-specific, and while "the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting— whether activity is 'protected' or an action is 'adverse' will depend on context." Thaddeus-X, 175 F.3d at 388. At this early stage of the litigation, this key variable — the context and substance of Hall's statements to the individual union employees — is missing.[4]

It is true that public figures must "have thicker skin than the ordinary citizen when it comes to attacks on their views." Mattox, 183 F.3d at 522. But Plaintiff has alleged more than just an attack on his views. Rather, he has alleged a targeted campaign to terminate his representation of Local 953, as distinct from mere criticism of his ideas and opinions. While Plaintiff, as a self-described union and community activist, may have voluntarily opened himself up to a greater degree of the latter, that does not also dictate that he must be required to tolerate the former. See id. (distinguishing between "a deliberate attempt to discredit" that played out in

---

[3] The Court also rejects Hall's argument that Plaintiff himself has not been deterred from engaging in protected conduct, as evidenced by numerous lawsuits filed on his behalf. Def. Hall Mot. at 19. The standard is whether a "person of ordinary firmness" would be deterred — not whether the plaintiff himself had been deterred. Fritz, 592 F.3d at 728 ("[T]he test is whether a person of ordinary firmness would be deterred; actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action.").

[4] For the same reasons, Hall's argument that her own statements in response to Plaintiff's cannot constitute adverse action because they too are protected by the First Amendment is premature. Def. Hall Mot. at 21; Def. Hall Reply at 6-7. The Court cannot determine whether Hall's own comments to the individual union employees were protected speech precluding § 1983 liability without knowing exactly what it is Hall said.

public conversation versus being fired by a government employer for expressing protected views). This argument must await a more developed record.

### 3. Causal Relationship

Regarding the last element for a prima facie retaliation claim, Plaintiff must plausibly plead that the actions were motivated, at least in part, by Plaintiff's protected conduct. Notably, Hall does not make any argument that Plaintiff has failed to do so. And Plaintiff's complaint specifically alleges that the retaliatory conduct was in response to Plaintiff's protected activity of filing a lawsuit against the Board and his criticism of Hall in the media. First Am. Compl. ¶ 126. Accordingly, Plaintiff has sufficiently alleged this last element.

### C. Qualified Immunity

Being sued in her individual capacity, Hall is entitled to assert qualified immunity. Guest v. Leis, 255 F.3d 325, 337 (6th Cir. 2001). Qualified immunity is designed to "protect public officials from undue interference with their duties and from potentially disabling threats of liability." Perez v. Oakland Cnty., 466 F.3d 416, 426 (6th Cir. 2006) (quoting Vakilian v. Shaw, 335 F.3d 509, 516 (6th Cir. 2003)). It protects officials who reasonably thought that their actions comported with the rights that are alleged to have been violated. Id. The inquiry is two-step: first, did the plaintiff establish violation of a constitutional or statutory right, and, if so, was the right violated "clearly established" at the time of the violation. Id. at 426-427.

As discussed above, Plaintiff has plausibly alleged a claim of unconstitutional retaliation in violation of his First Amendment rights. Therefore, at this stage of the litigation, Hall is not entitled to qualified immunity on that basis.

Further, Plaintiff's right to be free from a public official threatening his private employment in retaliation for his exercising his First Amendment rights was clearly established

at the time the violation occurred. See id. at 427 ("[P]laintiff must show that the right was clearly established 'in light of the specific context of the case, not as a broad general proposition.'" (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001))). Generally, the "clearly established" requirement means "that binding authority would have alerted reasonable people in [the defendant's] position that her conduct was unlawful." Id. at 428. Courts "look principally to the law of this circuit and to the Supreme Court." Id. at 427. This is Plaintiff's burden to bear. Id.

Plaintiff alleges that he served as staff representative and chief negotiator for Local 953 from 2012-2014, which appears to have been when the alleged retaliatory incidents occurred. See First Am. Compl. ¶ 123. By 2012, several Sixth Circuit decisions had held that a government official could not permissibly jeopardize or otherwise threaten a citizen's employment (or even future employment) in retaliation for the citizen exercising his or her First Amendment rights. See Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 725-726 (6th Cir. 2010); Harris v. Bornhorst, 513 F.3d 503, 518-519 (6th Cir. 2008).

Accordingly, at least on the facts as alleged, the Court cannot now state that Hall is entitled to qualified immunity.

### D. Plaintiff's Motion for Leave to File a Second Amended Complaint

Following the hearing on this motion, Plaintiff filed a motion for leave to file a second amended complaint. See Pl. Mot. for Leave to File. That motion is denied in part and granted in part.

As detailed in his motion, Plaintiff's proposed second amended complaint attempts to plead additional facts tying Hall's participation in the Harvard program to her status as a state actor. See id. at 4-6. Plaintiff also seeks to add an additional First Amendment retaliation claim

17

against Hall in her individual and official capacities as an administrative appointee of the Wayne County Sheriff, based on those additional facts. Id. at 5-8. As discussed, supra, however, these newly pleaded facts do not support or establish the necessary inference. Because these newest allegations do not assist Plaintiff in overcoming Hall's 12(b)(6) motion, amendment would be futile, and the Court denies Plaintiff's motion as to this particular alleged instance of retaliation and as to the additional retaliation claim. See Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 569 (6th Cir. 2003) ("[L]eave to amend may be denied where the amendment would be futile.").

Plaintiff's proposed second amended complaint also raises an additional allegation touching upon Hall's alleged interference in Plaintiff's employment with AFSCME Council 25 and/or Local 953. The amended pleading contends that Plaintiff's supervisor was directed to accompany Plaintiff to the negotiations with the WCAA, and Plaintiff was told "that if [Plaintiff's] presence would prevent Local 953 from getting a contract, that Plaintiff Davis would be removed as their staff representative as Defendant Hall requested." Proposed Second Am. Compl. ¶ 137. This proposed change is not mentioned in Plaintiff's motion; therefore, there is no explanation for why the allegation was not included in earlier iterations of Plaintiff's complaint. Nonetheless, the Court perceives no prejudice to Hall in permitting this lone amendment. This particular factual allegation lends support to Plaintiff's claim that Hall's communications to individual union employees had a concrete impact on Plaintiff's relationship with his employer. Accordingly, the Court grants Plaintiff's motion for leave to amend his complaint to add this lone additional allegation.

## IV.  CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Hall's motion to dismiss (Dkt. 29), and grants in part and denies in part Plaintiff's motion for leave to file a second amended complaint (Dkt. 41).  Plaintiff shall file an amended complaint on or before July 5, 2016, adding only the factual allegation allowed by this Opinion and Order.

SO ORDERED.


Dated:  June 29, 2016                             s/Mark A. Goldsmith
Detroit, Michigan                                 MARK A. GOLDSMITH
                                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 29, 2016.

                                                  s/Karri Sandusky
                                                  Case Manager