UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TREVOR-BLAIR
DAVIS, SR.,

       Plaintiff,                           Case No. 15-cv-12076

vs.                                                   HON. MARK A. GOLDSMITH

CARLA A. ROBERT, et al.,

       Defendants.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT SUZANNE T. HALL'S MOTION FOR SUMMARY**
**JUDGMENT (Dkt. 60)**

Plaintiff Robert Trevor-Blair Davis, Sr., brought this lawsuit under 42 U.S.C. § 1983 against two municipal officials alleging various violations of his constitutional rights. On June 29, 2016, the Court held that Davis's allegations concerning Defendant Suzanne T. Hall's statements, although "short on specific[s]," were sufficient to constitute a plausible adverse action for a First Amendment retaliation claim. Davis v. Robert, 192 F. Supp. 3d 847, 858 (E.D. Mich. 2016). Since that time, the record has been supplemented by the depositions of the parties and various union officials.

This matter is now before the Court on Hall's motion for summary judgment (Dkt. 60). Pursuant to the Court's September 21, 2016 stipulated scheduling order (Dkt. 59), the motion is limited to one issue — whether there is sufficient evidence that Hall made statements constituting an adverse action sufficient to give rise to a First Amendment retaliation claim (Dkt. 61). This issue has now been fully briefed, and a hearing was held on April 6, 2017. Because the only admissible statement attributable to Hall is insufficient to constitute an adverse action, the Court grants the motion.

1

# I. BACKGROUND

The genesis of the dispute between Davis and Hall is adequately set forth in the Court's decision denying Hall's motion to dismiss. The Court now supplements that recitation with relevant facts from the depositions that were subsequently taken.

Davis began his career with Michigan's American Federation of State, County, and Municipal Employees ("AFSCME") Council 25 around 2003. Davis Tr., Ex. 1 to Def. Mot., at 8 (Dkt. 60-2). While Davis began his employment as a union organizer, he was eventually assigned as a staff representative to the Wayne County Airport Authority ("WCAA") Local 953 ("Local 953") in 2012. Id. at 13-14. In his role as a staff representative, Davis would handle grievances submitted by union members, attend union meetings, and advise members on any other work-related issues. Id. at 14. Davis was also responsible for serving as the chief negotiator for Local 953 as it tried to reach a new collective bargaining agreement with the WCAA. Id. at 11.

In addition to Davis, members of the union negotiating team included Bradley Manley, then-president of Local 953, and Nyota Ellis, a Local 953 committee member. Ellis Tr., Ex. 4 to Def. Mot., at 5 (Dkt. 60-5). During the course of negotiations with the WCAA, Manley became increasingly dissatisfied with Davis's participation. Manley Tr., Ex. 5 to Def. Mot., at 6 (Dkt. 60-6). Manley testified that Davis would often fail to show up to negotiations, and when he was in attendance, he was often on the phone or working on personal matters unrelated to the negotiation. Id. at 12. Ellis also testified to Davis's failure to meaningfully contribute to the negotiations. Ellis Tr. at 6.

Frustrated at the progress of negotiations, Manley approached Hall, the chairwoman of the WCAA's board of directors, just prior to a board meeting. Manley Tr. at 6. Manley requested the support of the WCAA board in order to put pressure on the CEO of the WCAA, Tom Naughton,

to get a deal done. Id. at 9. Hall informed Manley that, as a board member, she would not interfere in negotiations, and that the matter should be resolved with Naughton. Hall Tr., Ex. 3 to Def. Mot., at 13 (Dkt. 60-4). According to Manley, Hall added that Davis was not "doing anything good for getting the contract over," which Manley understood to mean that Davis was "not doing [Local 953 any] favors." Manley Tr. at 11. While Hall remembers speaking with Manley regarding the negotiations, she denies saying anything about Davis. Hall Tr. at 14.

Sometime later, Manley emailed a letter to Al Garrett, the president of AFSCME Council 25, which stated:

> It comes with great sadness and regret to inform you that we are hereby terminating Mr. Davis as our Staff Representative for the following reasons.
>
> > 1. Failure to show up on time or at all for [negotiations].
> > 2. Failure to Prep or strategize with the [negotiating team].
> > 3. Failure to follow through with requested information.
> > 4. Lack of interest.
>
> Mr. Davis is a great activist but his lack of interest within our fight as a Local, makes this partnership unbearable.

7/9/2013 Letter, Ex. 7 to Def. Mot. (Dkt. 60-8). Manley noted in his testimony that he did not include Hall's comment regarding Davis in the email. Manley Tr. at 7-8.

After receiving the email, Garrett convened a meeting with Manley and Davis. Id. at 7. At the meeting, Manley reiterated his problems with Davis, and he also told Garrett of Hall's comment that Davis was not "doing anything good for getting the contract over." Id. at 11. Garrett responded by telling Manley that, as president of Local 953, Manley did not have the authority to fire Davis as staff representative. Id. at 12. However, Garrett warned Davis that he would be fired if he continued to work on personal matters on union time or impeded the union's ability to get a

3

contract. Id. at 13; Davis Tr. at 34. According to Davis, Garrett also stated that Davis's supervisor would be accompanying Davis to all future negotiations. Davis Tr. at 34. This instruction notwithstanding, Manley testified that he finished the negotiations without Davis, and that he was able to get a deal done by working with Naughton. Manley Tr. at 12-13, 16. Manley testified that Davis's only further involvement was signing the collective bargaining agreement once the terms had been agreed to. Id. at 13.

Davis continued working as staff representative for Local 953 after the agreement was signed, but was eventually terminated from the union altogether in September 2014 after he pleaded guilty to federal charges relating to false tax filings and his conduct while serving on the Highland Park Board of Education. Davis Tr. at 22-23.

## II. STANDARD OF REVIEW

A court must grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." U.S. S.E.C. v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 250 (quoting Fed. R. Civ. P. 56(e)). Furthermore, plaintiff "cannot rely on conjecture or conclusory accusations." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008).

## III. ANALYSIS

"A § 1983 claim must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). Regarding the first element, "[i]t is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999). In order to establish a First Amendment retaliation claim, the plaintiff must show "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Id. at 394.

The only issue presently before the Court is whether there is genuine dispute of material fact that Hall undertook an adverse action against Davis "that would deter a person or ordinary firmness from continuing to engage" in protected conduct. Id. In his second amended complaint, Davis alleges that Hall "approached some members" of Local 953 and requested that they speak with Garrett about removing Davis as the local's staff representative. Second Am. Compl. ¶ 108 (Dkt. 48). When asked during his deposition how he had heard that Hall wanted him removed as staff representative, Davis repeated his assertion that he heard from "some of the union members." Davis Tr. at 27.

As noted above, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 251-252 (quoting Fed. R. Civ. P. 56(e)). The adverse party is also prohibited from relying on "conjecture or conclusory allegations." Arendale, 519 F.3d at 605. Davis's

5

testimony that "some of the union members" told him of Hall's statement that agreement on a contract would not be reached unless Davis was removed as staff representative can hardly be considered a specific fact sufficient to defeat a properly supported motion for summary judgment.

Further, Davis's testimony constitutes hearsay. "Under Fed. R. Civ. P. 56(e), evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997). The Sixth Circuit addressed a similar set of facts in Guindon v. Township. of Dundee, Michigan, 488 F. App'x 27 (6th Cir. 2012). In that case, the plaintiff brought a First Amendment retaliation claim alleging that the defendant directed third parties not to employ or do business with the plaintiff. Id. at 31. In response to the defendant's motion for summary judgment, the plaintiff submitted the declaration of a nonparty, David Hoffman. Id. at 38. In his declaration, Hoffman stated that he was told by an unidentified employee of the defendant that the plaintiff was not hired for certain jobs because of threats made by the defendant. Id. The court held that "[b]ecause offered to prove the truth of the matter asserted, Hoffman's declaration is inadmissible hearsay under Fed. R. Evid. 801 and 802. Plaintiffs have not met their burden under Fed. R. Civ. P. 56." Id.

Similarly, Davis's testimony is hearsay because he seeks to introduce out of court statements allegedly made by union members for the truth of the matter asserted in the statements, i.e., that Hall had stated that a deal would not be reached unless Davis was removed as staff representative. As a result, Davis's testimony that "some of the union members" told him of Hall's statements is insufficient to establish a genuine dispute of material fact.

Davis also testified that Manley once told him that Hall made a comment about having Davis removed from his job as staff representative. Davis Tr. at 46. This is also inadmissible hearsay, because it seeks to introduce Manley's out of court statement for its truth.

Manley did testify about a conversation he had with Hall concerning Davis, but there was nothing actionable related in that conversation. Manley testified that he approached Hall before a board meeting and requested that she speak with Naughton about getting a deal done with Local 953. Manley Tr. at 9. After informing Manley that she would not interfere in the negotiations, she commented that Davis was not "doing anything good for getting the contract over." Id. at 11. Manley testified that he did not include this comment in his email to Garrett, and that Garrett only called the meeting because of the email. Id. at 7-8. Once in the meeting, Manley mentioned Hall's comment regarding Davis as "another coal to the fire per se, something else to throw on." Id. at 8.

It cannot be said that Hall's statement — that Davis was not "doing anything good for getting the contract over," id. at 11 — "would deter a person of ordinary firmness from continuing to engage" in protected First Amendment conduct. Thaddeus-X, 175 F.3d at 386. As the chief negotiator for Local 953, and a self-described public activist, Davis, or anyone else in his shoes, would not be deterred from engaging in protected conduct as the result of such a minor, vague and non-specific criticism. See id. at 394 (requiring courts to tailor the adverse action prong to the circumstances of the specific retaliation claim, and holding that prisoners and public employees are required to tolerate more than the average citizen); see also Mezibov v. Allen, 411 F.3d 712, 722 (6th Cir. 2005) (comments by prosecutor that defense attorney was a bad lawyer, inexperienced, and put his interests before his client's did not rise to the level of an adverse action).

Hall's statement makes no reference to Davis's protected conduct, i.e., his lawsuit against Hall or his statements to the media, nor does it include any kind of threat or intimation that a contract would not get finalized if Davis stayed on as staff representative. Hall also provided unrebutted testimony that she informed Manley she would not interfere in negotiations and Manley should speak directly with Naughton. Hall Tr. at 13. Unlike in Fritz v. Charter Township of Comstock, 592 F.3d 718, 725 (6th Cir. 2010), which this Court discussed in its decision denying Hall's motion to dismiss, Hall's statement to Manley did not express her "dislike and opposition" to Davis's protected speech, nor, more importantly, did the statement reference any effect the protected conduct was having on the negotiations. At most, it was criticism of Davis's effectiveness, which was made to a third party — not a threat to take significant action against Davis.

Other cases finding instances of First Amendment retaliation illustrate how constitutionally insignificant Hall's actions were in comparison. See McBride v. Vill. of Michiana, 100 F.3d 457, 459 (6th Cir. 1996) (government officials were denied qualified immunity after they contacted the employer of plaintiff, a local newspaper, in an attempt to get her removed from the political beat for coverage they did not approve of), abrogated on other grounds by Thaddeus-X, 175 F.3d at 394; Strader v. Ky. Dep't of Fish & Wildlife Res., No. CIV.A. 3:09-62-DCR, 2011 WL 181300, at *8 (E.D. Ky. Jan. 19, 2011) (governmental department committed an adverse action when it started a competing radio show in order to divert listeners from the plaintiff after he was critical of the department). Hall's relatively innocuous remark that Davis was not assisting the union does not come close to the actions taken in these other cases.

Finally, Garrett's testimony did not provide any evidence of an adverse action by Hall. When questioned regarding the meeting he held with Davis and Manley, Garrett testified that he

8

had no specific recollection of the meeting, much less the reason he called it. Garrett Dep., Ex. 1 to Pl. Supp. Br., at 14-17 (Dkt. 70-1). Regarding Hall, Garrett testified that she never told him directly that there would not be a contract if Davis remained a member of the union bargaining team, noting that their discussions were primarily limited to substantive contractual issues. Id. at 19-20, 23.

When asked if it was ever indirectly expressed to him that a contract would not be reached with Davis on the bargaining team, Garrett responded that "I had a meeting with [Hall] in my office that kind of gave me the sense of it." Id. at 23-24. However, Garrett does not elaborate on this and, when asked if he felt that Davis's lawsuit affected his discussions with Hall, testified, "I can't say that I [sic] did." Id. at 25. Garrett's vague statement that he felt there was an implication from Hall that a contract would not be reached if Davis was on the bargaining team does not create a genuine dispute of material fact regarding whether Davis suffered an adverse action. See Anderson, 477 U.S. at 250 ("when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e)). An individual's subjective feelings regarding the circumstances surrounding an alleged adverse action do not control. See Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002) ("the adverseness inquiry is an objective one . . . the relevant question is whether the defendants' actions are capable of deterring a person of ordinary firmness" (emphasis in original); Santiago v. Blair, 707 F.3d 984, 992 (8th Cir. 2013) ("The 'ordinary-firmness' test is an objective one, not subjective."). Here, there are no concrete, objective facts communicating a threat relative to Davis. At most, Garrett had a subjective "sense" that the contract might be held if Davis stayed on the negotiating team, which "sense" is not constitutionally sufficient to survive summary judgment.

9

Because there is no admissible evidence that Hall committed an adverse action, Davis's First Amendment retaliation claim fails.

### III.  CONCLUSION

For the above reasons, the Court grants Hall's motion for summary judgment (Dkt. 60).

SO ORDERED.

Dated:  August 14, 2017               s/Mark A. Goldsmith
Detroit, Michigan                     MARK A. GOLDSMITH
                                      United States District Judge

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 14, 2017.

                                      s/Karri Sandusky
                                      Case Manager